1                            UNITED STATES DISTRICT COURT
2                              DISTRICT OF PUERTO RICO

3    ANA GARCÍA-ROSADO,

4        Plaintiff,                               Civil No. 12-1383 (JAF)

5        v.

6    SCOTIABANK, et al.,

7        Defendants.

8

9

10                                **<u>OPINION AND ORDER</u>**

11       Plaintiff Ana García-Rosado ("Plaintiff") filed suit against Defendant Scotiabank

12  ("Scotiabank"), alleging age discrimination, in violation of P.R. Law No. 100, of June 30,

13  1959, as amended, 29 L.P.R.A. § 146 <u>et seq.</u> ("Law 100"); and unjust dismissal, in violation

14  of P.R. Law No. 80, as amended, L.P.R.A. § 185a, <u>et seq.</u> ("Law 80").  Plaintiff originally

15  filed suit in Puerto Rico's Court of First Instance in Fajardo. (Docket No. 1-7.[1]) Intervenor-

16  Defendant, the Federal Deposit Insurance Corporation ("FDIC"), then removed to this

17  court.[2]  (Docket No. 1.)  The FDIC moved for dismissal under Federal Rules of Civil

18  Procedure 12(b)(1) and 12(b)(6).  (Docket No. 18.)  Defendant Scotiabank moved for

19  summary judgment under Federal Rule of Civil Procedure 56.[3] (Docket No. 17.) Plaintiff

20  opposed both motions, (Docket Nos. 21, 22), Defendants responded (Docket Nos. 29, 34,

21  35), and Plaintiff replied (Docket No. 33).  For the following reasons, we deny Defendants'

22  motion to dismiss and motion for summary judgment.

---

[1] An English translation of the complaint is available at Docket No. 22-31.
[2] We denied Plaintiff's motion to remand.   (Docket No. 9.)
[3] The FDIC joined Scotiabank's motion for summary judgment.  (Docket Nos. 20; 30.)

# I.

## __Factual Synopsis__

1
2

3     We derive the following facts from the parties' motions and responses, statements of

4     facts, and exhibits.  (Docket Nos. 17-1; 17-2; 18; 21; 22; 22-1; 22-2; 22-3; 22-4; 22-5.)

5     Plaintiff Ana García-Rosado ("Plaintiff") is a fifty-seven year old woman from

6     Puerto Rico.  Beginning in February 1998, until 2010, Plaintiff worked at the Fajardo

7     branch of RG Premier Bank. (Docket No. 22-2.)  RG Premier Bank was a bank in Puerto

8     Rico that offered business and consumer financial services.  (Docket No. 17-2 at 1.)

9     In April 2010, Puerto Rico's Office of the Commissioner for Financial Institutions

10     ("OCFI) assumed control of RG Premier Bank and appointed the FDIC as receiver.  (Docket

11     No. 17-2 at 2.)  The FDIC assumed control of RG Bank's assets and liabilities.  (Id.)  On the

12     same day, April 30, 2010, Scotiabank acquired most of the branches of RG Premier Bank,

13     including the branch where Plaintiff worked in Fajardo.  (Docket No. 22-2.)  Scotiabank and

14     the FDIC entered into a Purchase and Assumption Agreement ("P&A Agreement") that

15     detailed the contractual arrangements.  (Docket Nos. 17-2 at 4; 17-6.)

16     The next day, on Saturday, May 1, Plaintiff reported for work as she normally did,

17     and worked without interruption.   (Docket No. 22-1.)   On May 2, 2010, Scotiabank

18     executives held a meeting at the Caribe Hilton Hotel with bank employees.  (Id.)  Plaintiff

19     alleges that at this meeting, she and other employees were given assurances regarding their

20     continued employment with Scotiabank.  (Id.)  Specifically, Scotiabank executives told the

21     bank employees that they were planning to make the best possible bank by combining the

1   strengths of RG and Scotiabank.  (Id. at 6.)  One of the strengths of RG Bank, the executives

2   added, had always been its people.  Plaintiff continued working after that.

3        During the month of May, Scotiabank initiated a publicity campaign whose motto

4   was "RG with the strength of Scotiabank." (Docket No. 22-1 at 6.) Scotiabank also issued

5   press releases assuring RG clients that they would see little variation in their bank branches

6   and would find the same RG employees they dealt with before the acquisition.  (Id.)  During

7   this time, pursuant to the P&A agreement entered into with the FDIC, Scotiabank was

8   responsible for paying the salaries of RG's employees.  (Id.)

9        Some days after the May 2 meeting, Plaintiff was called into an office to sign a

10  contract with a firm called C.D. Mitchell & Co.  (Id.)  Plaintiff was told that she would not

11  be paid for her past time worked unless she signed the contract.  (Id.)  The contract was

12  dated April 30, though Scotiabank's own employees admit that it could only have been

13  signed several days after that.  (Docket No. 22-5 at 33.)  Plaintiff states that she signed the

14  document one to two weeks after April 30.  (Docket No. 22-2.)  Plaintiff did not have an

15  opportunity to consult an attorney before signing.  (Id.)  C.D. Mitchell is a separate

16  corporation than Scotiabank.  (Docket No. 17-2 at 3.)  The FDIC recommended C.D.

17  Mitchell to Scotiabank, which then contracted independently with C.D. Mitchell.  (Id. at 4.)

18       On May 22, 2010, Plaintiff was told that her employment was being terminated.  In

19  June, Scotiabank hired most of the other RG Bank employees (other than Plaintiff) for

20  permanent positions.  (Docket No. 17-3.)

21

1                                                    **II.**

2                                           **Legal Standards**

3                                   **A.  Motion to Dismiss**

4     **1.  Rule 12(b)(1)**

5         A defendant may move to dismiss an action against him under Federal Rule of Civil

6     Procedure 12(b)(1) for lack of federal subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

7     "When a defendant moves to dismiss for lack of federal subject matter jurisdiction, 'the

8     party invoking the jurisdiction of a federal court carries the burden of proving its

9     existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir.2007) (citing Murphy v.

10    United States, 45 F.3d 520, 522 (1st Cir.1995)).

11        Rule 12(b)(1)provides a "large umbrella, overspreading a variety of different types of

12    challenges to subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-

13    63 (1st Cir. 2001).  A movant may base a challenge to the sufficiency of the plaintiff's

14    assertion of subject matter jurisdiction solely on the pleadings. Id. at 363. In that case, we

15    take the plaintiff's "jurisdictionally-significant facts as true" and "assess whether the

16    plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id. at 363;

17    Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir.2000).

18    **2.  Rule 12(b)(6)**

19        A defendant may move to dismiss an action, based solely on the complaint, for the

20    plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

21    12(b)(6).  In assessing such a motion, we "accept[] all well-pleaded facts as true, and we

1    draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar

2    Found., 993 F.2d 962, 971 (1st Cir. 1993).

3           "[A]n adequate complaint must provide fair notice to the defendants and state a

4    facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st

5    Cir. 2011).   In considering a complaint's adequacy, we disregard "statements in the

6    complaint that merely offer legal conclusions couched as fact or threadbare recitals of the

7    elements of a cause of action." Id. (internal quotation marks omitted).  We then take as true

8    what remains, "[n]onconclusory factual allegations . . . even if seemingly incredible." Id.

9    On the basis of those properly pled facts, we assess the "reasonableness of the inference of

10   liability that the plaintiff is asking the court to draw." Id. at 13.

11

12                          **B.  Summary Judgment Under Rule 56**

13          We must grant a motion for summary judgment "if the pleadings, the discovery and

14   disclosure materials on file, and any affidavits show that there is no genuine dispute as to

15   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

16   P. 56(a).  A factual dispute is "genuine" if it could be resolved in favor of either party and

17   "material" if it potentially affects the outcome of the case.  Calero-Cerezo v. U.S. Dep't of

18   Justice, 355 F.3d 6, 19 (1st Cir. 2004).

19          The movant carries the burden of establishing that there is no genuine dispute as to

20   any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The movant may

21   satisfy this burden by "citing to particular parts of materials in the record, including

22   depositions, documents, electronically stored information, affidavits or declarations, . . . or

1   other materials." Fed. R. Civ. P. 56(c)(1)(A).  Furthermore, to establish the absence of a

2   genuine dispute of material fact, the movant need not produce evidence but may instead

3   point to a lack of evidence supporting the nonmovant's case.  <u>See</u> Fed. R. Civ. P.

4   56(c)(1)(B); <u>see also</u> <u>Celotex</u>, 477 U.S. at 325.  "Once the moving party has made a

5   preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must

6   produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy

7   [dispute]." <u>Clifford v. Barnhart</u>, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks

8   omitted); <u>see also</u> Fed. R. Civ. P. 56(c)(1).

9         In evaluating a motion for summary judgment, we must view the record in the light

10  most favorable to the nonmovant.  <u>See</u> <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133,

11  150–51 (2000).  "The court need consider only the cited materials, but it may consider other

12  materials in the record." Fed. R. Civ. P. 56(c)(3).

13

14                                          **III.**

15                                      **<u>Analysis</u>**

16        We first address the motion to dismiss and then the motion for summary judgment.

17  For the reasons discussed below, we deny both motions.

18  **A.     <u>Motion to Dismiss</u>**

19        The FDIC argues that Plaintiff's claims should be dismissed.  (Docket No. 18.)  The

20  FDIC frames its arguments as a motion to dismiss for lack of subject matter jurisdiction, and

21  a motion to dismiss for failure to state a claim.  We find that under either theory, the FDIC's

22  arguments fail.

1    The FDIC presents three arguments in its motion to dismiss: 1) Plaintiff's termination

2    from RG Premier Bank was justified under Puerto Rico's Law 80; 2) Plaintiff's claims are

3    barred because she failed to comply with the administrative remedies laid out in the

4    Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"),[4] 12

5    U.S.C. § 1821(d)(3)-(13); 3) the P&A Agreement explicitly assigns liability to the FDIC,

6    and to the extent that Puerto Rico's Law 80 is in conflict with the agreement, it is preempted

7    by the Federal Deposit Insurance Act, 12 U.S.C. §1811 et seq. ("FDI Act").  (Docket Nos.

8    18; 29 at 1-2.)  For the reasons explained below, we reject each of these arguments.

9        First, the FDIC argues that the reason for Plaintiff's dismissal from RG Premier Bank

10   was RG Bank's insolvency, and therefore, Plaintiff's termination was for "just cause" under

11   Puerto Rico Law 80.  (Docket No. 18 at 2.)  The FDIC does not cite to any case law or

12   specific statutory provisions in support of this argument.  In fact, we were unable to find any

13   refereferences to this argument beyond one or two sentences in the introductions of the

14   FDIC's motion and reply brief.  (Docket Nos. 18; 29.)   The argument is thus likely waived.

15   See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a

16   perfunctory manner, unaccompanied by some effort at developed argumentation, are

17   deemed waived").

18       In any case, the FDIC's first argument fails on the merits as well, because Plaintiff

19   does not argue that she was dismissed from RG Premier Bank; she argues that she was

_____

[4] In 1989, Congress passed FIRREA to amend the bank insolvency provisions of the "FDI Act," 12 U.S.C. § 1811 et seq.  In its motion, the FDIC refers to the amended version of the "FDI Act," which includes FIRREA, rather than to FIRREA in particular. (See Docket No. 18 at 5.)

Civil No. 12-1383 (JAF)                                                                 -8-

1    dismissed from Scotiabank.   (Docket No. 21 at 2.)   Plaintiff provides several factual

2    assertions that make this claim plausible: she states that she has never received any

3    documents evidencing her dismissal from RG Premier Bank, despite her repeated requests;

4    she also states that she went to work uninterrupted on May 1 and received repeated

5    reassurances that her employment with Scotiabank was stable.   If Plaintiff was in fact

6    dismissed by Scotiabank, and not RG Premier Bank, the FDIC's argument about the reasons

7    for her dismissal from RG Premier Bank has no bearing.

8            The FDIC's second argument is that Plaintiff cannot pursue a claim against

9    Scotiabank because she did not comply with the claims procedures outlined in FIRREA.

10   (Docket No. 18 at 6-11.)   In her opposition, Plaintiff responds that FIRREA does not apply

11   to her because she was not a creditor at the time RG Premier became insolvent.   (Docket

12   No. 21 at 2.)  We agree with Plaintiff.

13           FIRREA provides an administrative process for presenting and resoloving claims

14   against a failed banking institution.    To strengthen the speed and finality of this

15   administrative process, courts are deprived jurisdiction over the following claims:

16           (i)     any claim or action for payment from, or any action seeking a
17                   determination of rights with respect to, the assets of any depository
18                   institution for which the [FDIC] has been appointed receiver, including
19                   assets which the [FDIC] may acquire from itself as such receiver; or
20           (ii)    any claim relating to any act or omission of such institution or the
21                   [FDIC] as receiver.
22
23   12 U.S.C. § 1821(d)(13)(D).

Civil No. 12-1383 (JAF)                                                                    -9-

1      Yet, as many other courts have noted, FIRREA's reach does not extend to "all

2   litigation involving an FDIC receivership; the test is whether the claims are against the

3   failed institution or its receiver, and therefore susceptible to administrative resolution."

4   Alvarado-Rivera v. Oriental Bank & Trust, Civ. No. 11-1458, 2012 WL 4679908, at *4

5   (D.P.R. Aug. 8, 2012) (collecting cases), adopted by Rivera v. Oriental Bank & Trust, Civ.

6   No. 11-1458, 2012 WL 4678864 (D.P.R. Sep. 28, 2012).   In Alvarado-Rivera, the

7   magistrate judge rejected the FDIC's argument that FIRREA deprived it of jursidiction.  Id.

8   We adopt much of the well-reasoned and thoughtful analysis of that court, which ruled on

9   very similar facts to the ones presented here.   See id. (recommending denial of FDIC's

10  motion to dismiss in Law 80 suit brought by plaintiff employees against successor bank).

11     Here, Plaintiff's claims are against Scotiabank, not the FDIC or the failed bank.

12  Therefore, FIRREA does not apply to Plaintiff's claims, which accrued after Scotiabank

13  assumed control of the bank.  See Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207

14  (9th Cir. 2012) ("As a matter of first impression, claims based on a purchasing bank's

15  actions after purchasing a failed bank are not governed by FIRREA"); Am. Nat'l Ins. Co. v.

16  FDIC, 642 F.3d 1137, 1142 (D.C. Cir. 2011) ("In FIRREA, the word 'claim' is a term-of-art

17  that refers only to claims that are resolvable through the FIRREA administrative process,

18  and the only claims that are resolvable through the administrative process are claims against

19  a depository institution for which the FDIC is receiver.").   Because Plaintiff's claims are

20  against Scotiabank, not the FDIC or RG Premier Bank, FIRREA does not apply.  Am. Nat'l

21  Ins. Co., 642 F.3d at 1142.

1       The FDIC's third argument is that the P&A Agreement between the FDIC and

2       Scotiabank assigns all liability from RG Premier Bank to the FDIC; thus, to the extent Law

3       80 contradicts the P&A, it is preempted.  (Docket No. 18 at 11.)  We reject this argument as

4       well, for the same reason we rejected the FDIC's jurisdictional argument.   The P&A

5       Agreement could only assign liability to the FDIC for liabilities that had already accrued

6       when Scotiabank entered the agreement.  Scotiabank could not enter into an agreement with

7       the FDIC that isolated it from legal judgments for actions it would take in the future.  That is

8       exactly what Plaintiff claims happened here: after Scotiabank acquired RG Premier Bank's

9       assets from the FDIC, she continued to work for Scotiabank for a time, until she was

10       unjustly terminated.  The P&A Agreement cannot insulate Scotiabank from this claim.  See

11       Alvarado-Rivera, 2012 WL 4679908, at *8 ("Since the alleged factual predicate for

12       plaintiffs' claims did not occur until after the asset sale to [Scotiabank], these claims cannot

13       be characterized as claims against [RG Premier Bank], and thus could never have been

14       retained by the FDIC-R.").  We thus reject FDIC's third and final argument as well.

15       For the foregoing reasons, the FDIC's motion to dismiss will be denied.

16    **B.**    **Motion for Summary Judgment**

17       Defendant Scotiabank argues that it is entitled to summary judgment on Plaintiff's

18       Law 80 and Law 100 claims.  We analyze the Law 80 claim before briefly turning to the

19       Law 100 claim.

20       With respect to Plaintiff's Law 80 claims, Scotiabank makes three arguments: 1)

21       Plaintiff has no claim against Scotiabank, because Scotiabank was not RG Premier's

1  successor and Plaintiff never became an employee of Scotiabank; 2) Scotiabank never

2  agreed in the P&A Agreement to assume successor liability for RG Premier; and 3) Law 80

3  does not cover temporary employees such as Plaintiff who are hired only for a short term.

4  (Docket No. 17-1.)  For the following reasons, we reject each of these arguments.

5          Law 80 provides a severance pay as the exclusive remedy for covered employees

6  "contracted without a fixed term, who is discharged from his/her employment without just

7  cause." Otero-Burgos v. Interamerican Univ., 558 F.3d 1 (1st Cir. 2009) (quoting 29

8  L.P.R.A. § 185a).  In cases in which the statute applies, the employer is forced to pay the

9  discharged employee a "mesada," or severance payment, calculated by a formula contained

10  in the statute.  Id. (citing § 185a).

11          29 L.P.R.A. § 185f provides:

12          In the case of transfer of a going business, if the new acquirer continues to use
13          the services of the employees who were working with the former owner, such
14          employees shall be credited with the time they have worked in the basis under
15          former owners. In the event that the new acquirer chooses not to continue with
16          the services of all or any of the employees and hence does not become their
17          employer, the former employer shall be liable for the compensation provided
18          herein, and the purchaser shall retain the corresponding amount from the
19          selling price stipulated with respect to the business. In case he discharges them
20          without good cause after the transfer, the new owner shall be liable for any
21          benefit which may accrue under §§ 185a-185m of this title to the employee
22          laid off, there being established also a lien on the business sold, to answer for
23          the amount of the claim.
24
25  Id.
26
27          The determination of whether one business is the successor to another is "primarily

28  factual in nature and is based upon the totality of the circumstances of a given situation."

1  <u>Fall River Dyeing & Finishing Corp. v. NLRB</u>, 482 U.S. 27, 43 (1987) (internal quotations

2  and citations omitted); <u>see also</u> <u>Asseo v. Centro Medico del Turabo, Inc.</u>, 900 F.2d 445, 451

3  (1st Cir. 1990).  A court must also ask whether the new company has "acquired substantial

4  assets of the its predecessor and continued, without interruption or substantial change, the

5  predecessor's business operations."  <u>Id.</u>

6          On the factual record presented here, we think that Plaintiff has presented a genuine

7  dispute as to whether Scotiabank can be considered RG Premier's successor.  Plaintiff has

8  shown that Scotiabank did "acquire substantial assets of [RG Premier] and continued,

9  without interruption or substantial change, the predecessor's business operations."  <u>Id.</u>  RG

10  Premier's banking operations did continue without interruption, resuming normally the very

11  next day after the FDIC took control as receiver.  Scotiabank also emphasized to the public

12  and to its new employees that they could expect continuity between the two banks,

13  including its people.

14          We find that Plaintiff has also presented a genuine dispute as to whether she ever

15  became an employee of Scotiabank for the purposes of Law 80.  Plaintiff has shown that

16  after Scotiabank took control of RG Premier Bank's assets, it continued to operate the bank

17  branch where Plaintiff worked, without interruption.  Plaintiff reported to work as she

18  normally did, and received assurances that her employment with Scotiabank would

19  continue.  During this time, Scotiabank admits that it was responsible for paying the salaries

20  of the failed bank's employees, including Plaintiff's.

Civil No. 12-1383 (JAF)                                                                                    -13-

1       In addition to the evidence that Plaintiff presented, we also considered Scotiabank's

2    arguments and supporting facts.  We concluded that two material fact statements by

3    Scotiabank were either unsupported or contradicted by the record.   In its "Statement of

4    Uncontested Facts," Scotiabank writes that "On that same date [April 30, 2010], the FDIC

5    notified all of RG Premier Bank's employees, including Plaintiff, that their employment had

6    been terminated effective immediately . . ." (SUMF 9, see Docket No. 17-2 at 3.)  To

7    support this assertion, Scotiabank cites a paragraph in its own Notice of Removal.  (Id.;

8    Docket No. 1)  A party's own notice of removal is not the type of evidence "properly

9    considered on summary judgment." See D.P.R.R. 56(e) ("The court may disregard any

10   statement of fact not supported by a specific citation to record material properly considered

11   on summary judgment.").  Moreover, Plaintiff has contradicted Scotiabank's assertion by

12   stating that neither the FDIC nor RG Premier Bank ever notified her that she had been

13   dismissed.  She states further that she has repeatedly sought any documents evidencing the

14   alleged dismissal, but that Defendants have never produced any.  (Docket No. 22 at 5.)

15       Even more importantly, there is a genuine dispute about the date on which Plaintiff

16   entered into a contract with CD Mitchell & Co.  Defendant makes much of the assertion that

17   Plaintiff entered into a fixed term contract with CD Mitchell from April 30, 2010 to May 31,

18   2010.  (See SUMF 22-25, Docket No. 17-2 at 6) (stating that "Plaintiff was recruited by

19   C.D. Mitchell on April 30, 2010 as a temporary employee.").  The temporary employment

20   agreement that Plaintiff signed was also dated April 30.  (Docket No. 17-7.)  Yet Plaintiff

21   states that she remembers signing this contract one to two weeks after she began working

Civil No. 12-1383 (JAF)                                                                          -14-

1   for Scotiabank, when she was told that she had to sign it in order to receive payment for her

2   past work.  (Docket No. 22 at 5.)  And in his deposition, Troy Wright, the CEO of

3   Scotiabank Puerto Rico at the time, admitted that it was "strange" the agreement was dated

4   April 30.  (Docket No. 22-5 at 32-33.)  According to Mr. Wright, the letters were not

5   prepared until the 3rd of May, and may have been signed May 3rd, 4th or 5th.  (Id.)

6          These details are significant, because they show that Plaintiff may have had a

7   reasonable expectation of continued employment with Scotiabank.  In such cases, Law 80

8   provides:

9          Notwithstanding what is provided in the first paragraph of this section, the
10         mere fact that an employee renders services under a fixed term contract, in
11         itself, shall not have the automatic effect of depriving him/her of the
12         protection of §§ 185a-185m of this title, if the practice and circumstances
13         involved or other evidence in the contracting were of such a nature that they
14         tend to indicate the creation of an expectation of continuity in employment, or
15         appears to be a bona fide employment contract for an indefinite period of time.
16         In these cases, the employees thus affected shall be deemed to have been
17         contracted for an unspecific period of time.
18
19  29 L.P.R.A. § 185a.

20         These considerations distinguish this case from the one that Scotiabank cites

21  repeatedly in its brief, Acosta-Ramirez v. Banco Popular de P.R., 2012 WL 1123602

22  (D.P.R. March 30, 2012).  In Acosta-Ramirez, the court found that "[p]laintiffs have not

23  presented evidence that would indicate the employee had a reasonable expectation that

24  he/she would continue to be employed by the employer, in which case he/she would be

25  considered to have been hired for an indefinite term and, thus, within Law 80's remedy." Id.

26  at *10.  In stark contrast, here Plaintiff has presented several pieces of evidence that indicate

Civil No. 12-1383 (JAF)                                                    -15-

1   she had a reasonable expectation of continued employment.  We find that she has presented

2   a triable case as to whether she falls within Law 80's protection.

3        Scotiabank's remaining arguments are easily rejected.  In Part A, we explained our

4   reasons for rejecting the argument that the P&A Agreement could isolate Scotiabank from

5   liability for Plaintiff's Law 80 claims.  (See supra at 10.)  The contract could not immunize

6   Scotiabank from legal liability for actions it took after executing the agreement, nor could it

7   extinguish Plaintiff's rights before those rights had accrued.  We also find that at this stage,

8   the contract between Plaintiff and CD Mitchell cannot be classified as a "bona fide" short-

9   term agreement under 29 L.P.R.A. § 185k.  Under § 185k, a a short-term contract may be

10  "bona fide" if it is executed within the first day or ten days of an employee's work, and if it

11  clearly states that it is to provide "special tasks or tasks of a certain duration. . ."  Given the

12  uncertainty regarding when Plaintiff entered the contract, and the assurances she claims to

13  have received of future continued employment, we cannot conclude that the agreement falls

14  within the definition of § 185k.

15       For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's

16  Law 80 claims will be denied.

17       We now turn to Plaintiff's Law 100 claims.  To state a prima facie case of age

18  discrimination under Law 100, a plaintiff must carry the initial burden of "demonstrating

19  that he was actually or constructively discharged, and (2) alleging that the decision was

20  discriminatory."  Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007)

21  (citations omitted).  After the plaintiff has carried this initial burden, the burden shifts to the

Civil No. 12-1383 (JAF)                                                         -16-

1    defendant, "to show by a preponderance of the evidence that the discharge was made for

2    good cause as contemplated by Law 80." Id.

3         Plaintiff has met her initial burden of demonstrating that she was actually or

4    constructively discharged by Scotiabank.  She has also alleged that the reason for her

5    dismissal was age discrimination. (Docket No. 22-31 at 5-6.)  In her complaint, she alleges

6    that Scotiabank retained many of Plaintiff's younger colleagues, even though there was no

7    difference in the performance of her and her younger colleagues.  (Id.)  In a statement under

8    penalty of perjury by a Scotiabank human resources executive, Carmen Rodríguez Rivera

9    ("Rodríguez"), Rodríguez admits that "most of the employees that had been temporarily

10   hired by C.D. Mitchell were hired by Scotiabank on June 1, 2010."  (Docket No. 17-3.)

11   Plaintiff was not hired by Scotiabank, but Rodríguez's statement does not provide a reason

12   why.  (Id.)  The fact that Scotiabank did not hire Plaintiff, at the time a fifty-five year old

13   woman, but did hire most of the other C.D. Mitchell employees, raises the possibility of age

14   discrimination.  Moreover, Scotiabank has failed to explain why it made the hiring decisions

15   it did, or how and whether age was a consideration.  Nor has Scotiabank presented much, if

16   any, evidence to show that its decision to discharge Plaintiff was made for "good cause"

17   within Law 80.  (Docket No. 22.)   Therefore, we find that Scotiabank has failed to meet its

18   burden as defined by the First Circuit.  Hoyos, 488 F.3d at 6.  Scotiabank's motion for

19   summary judgment on Plaintiff's Law 100 claims will be denied.

20

21                                            **IV.**

Civil No. 12-1383 (JAF)                                                              -17-

1                                          **Conclusion**

2          For the foregoing reasons, we hereby **DENY** the FDIC's motion to dismiss (Docket

3  No. 18).  We also **DENY** Scotiabank's motion for summary judgment (Docket No. 17).

4          **IT IS SO ORDERED.**

5          San Juan, Puerto Rico, this 17th day of January, 2013.

6                                    s/José Antonio Fusté
7                                    JOSE ANTONIO FUSTE
8                                    United States District Judge